# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT CHENCINSKI, JR., #B75443, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 09–cv–658–MJR–SCW |
| DR. ALFONSO DAVID, GINA SHAFFER, SCOTT RHINE, WEXFORD HEALTH SERVICES, INC., | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. § 636(b)(1)(B)**, **FEDERAL RULE OF CIVIL PROCEDURE 72(b)**, and **LOCAL RULE 72.1(a)** for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections. It is **RECOMMENDED** that the Court **FIND** that Plaintiff did exhaust his administrative remedies as to Defendant Gina Shaffer, that Defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 47) be **DENIED**, and that the Court **ADOPT** the following findings of fact and conclusions of law:

## II. Findings of Fact

This matter stems from Plaintiff's treatment of blepharospasm, permanent nerve damage to his left eye and cheek, while he was incarcerated at the Shawnee Correctional Center (Doc. 8). Plaintiff's Complaint is against Wexford, Dr. David, Nurse Shaffer, and Scott Rhine for an Eighth

Amendment claim of deliberate indifference to a serious medical need (*Id.*). This motion for summary judgment was filed by Nurse Shaffer who argues that Plaintiff failed to exhaust his administrative remedies against her. Nurse Shaffer maintains that the grievance filed by Plaintiff does not name Shaffer (Doc. 47). Based on the Seventh Circuit's opinion in **Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)**, the undersigned held a hearing in the matter on February 4, 2011 (Doc. 75). The following recommendations are based upon evidence adduced at that hearing.

The grievance at issue in this case was filed by Plaintiff on January 19, 2009 (Doc. 47 Ex. A at p. 40). In the grievance, Plaintiff complained about not being allowed to see Dr. Umana for botox injections after being told by Dr. Fix that the injections was his only course of treatment. He notes in his grievance that when his paper work was submitted to Wexford by Dr. David, the response from Wexford was "continue conservative management" (*Id.* at p. 41). Plaintiff's grievance was received on January 19, 2009 and the Counselor issued a response on January 26, 2009, stating that Director of Nursing Gina Shaffer had explained that "continue conservative management" means to continue treatment that presents a decreased risk of complications (*Id.* at p. 40). The Grievance Officer's Report dated February 18, 2009 also stated that G. Shaffer had defined "continue conservative management" and that the botox injections were denied because of the "concern for risk of infection of toxins...[which] outweigh[ed] the temporary reduction of symptoms" (*Id.* at p. 39). The Chief Administrative Officer concurred with the findings of the Grievance Officer (*Id.*). Plaintiff sent his grievance to the Administrative Review Board after his grievance was denied by the prison. The Review Board denied the grievance, citing Shaffer's statement that Plaintiff was to continue conservative management treatment and that his needs were being addressed by the Shawnee Correctional Center Administration (Doc. 1 Ex. AA at p. 9). The letter from the Review Board was dated March 4, 2009 (*Id.*). It is undisputed that Shaffer was not named specifically in the grievance although several doctors

and other medical directors were named. Defendant Shaffer's name first appears in the grievance as part of the Counselor's Response, in which the Counselor cited Shaffer's explanation for "continued conservative management".

At the hearing, the parties did not dispute that Shaffer was not named in the January 19, 2009 grievance. Instead, the parties disagreed as to whether that failure to name Shaffer constituted a failure to exhaust or whether Plaintiff had exhausted his remedies against Shaffer under the principles in **Glick v. Walker, 2010 WL 2775864 (7th Cir. 2010),** as Plaintiff was unaware that Shaffer was involved in the decision to deny Plaintiff botox treatment.

### III. Conclusions of Law

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." **Wragg v. Village of Thornton, 604 F.3d 464, 467 (7th Cir. 2010)**. The Court must construe all facts in the light most favorable to Chencinski, as the non-moving party, and draw all reasonable inferences in his favor. **Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted*." **Id. (emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. **Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004)**. Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. **Id.**

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." **Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." **Dole, 438 F.3d at 809.**

As an inmate confined within the Illinois Department of Corrections, Chencinski was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code § 504.800 *et seq.*** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. **Id**. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, her or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may

appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

In this case, it is undisputed that Plaintiff did not name Defendant Shaffer in his January 19, 2009 grievance and that he did not become aware of Shaffer's involvement until he received the March 4, 2009 letter from the Administrative Review Board. The parties dispute whether Plaintiff's failure to name Shaffer constitutes a failure to exhaust.

Plaintiff cites to the recent Seventh Circuit decision in ***Glick v. Walker*, 2010 WL 2775864 (7th Cir. 2010)** for his proposition that the failure to name Shaffer does not affect his exhaustion of remedies (*See* Doc. 60 Ex. A). In ***Glick***, the prisoner plaintiff filed suit against employees of the Department of Corrections for denial of medical care, disregarding risks to his health, as well as retaliation. Defendants moved for summary judgment on Plaintiff's alleged failure to exhaust his claims that he was denied mental health services because of his security classification and was exposed to secondhand smoke due to his cell assignment. ***Glick*, 2010 WL 2775864, at * 1.** Defendants argued that Plaintiff failed to name specific employees involved in the decision-making process which assigned Glick his cell assignment and security classification. Both of his grievances had been denied on the merits and gone through the full administrative process, being upheld by the Review Board. ***Id.***

In reviewing the district court's dismissal of the case, the Seventh Circuit determined that the district court had read **20 Ill. Admin. Code § 504.810(b)** with too much emphasis on the first

Page 5 of 8

sentence, that the requirement to name individuals in the grievance was diluted by the second sentence requiring prisoners to name individuals "to the extent practicable." *Id.* **at \*3.** Instead, the Seventh Circuit found that Plaintiff had reasonably articulated the facts of his complaint, that he was unable to participate in therapy due to his classification and had heart issues but was placed in a cell with a smoker, and that it was unreasonable to expect a prisoner to "peel back [the] layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision." *Id.* It was unreasonable to require the prisoner to determine which one of the "army" of administrators was behind his placement and classification decision and that Glick had no way of knowing who made the ultimate decision regarding his classification in the prison system. *Id.*

In this case, Chencinksi faced the same uphill battle in trying to determine who at Wexford was responsible for the decision to "continue conservative management" treatment. He had no way of knowing that Nurse Shaffer was possibly involved in the decision making process as her name failed to appear on any of Chencinski's patient reports which Defendant acknowledges Chencinski requested copies of after every meeting with the medical staff (*See* Def's Exhibit 1). Instead, Plaintiff provided as much information as was practicable given his lack of knowledge of Nurse Shaffer's involvement. His grievance was extremely detailed, noting every possible person involved in the decision to deny him the botox treatment. He explained all of the other Defendants' involvement in the decision and also included other medical staff he knew were involved, including Dr. David, the medical director, and Wexford, itself. He even stated that his request for botox injections had been denied by Wexford and that the denial had stated "continue conservative management." Clearly, Chencinski did all that was practicable given the lack of knowledge of Shaffer's involvement. There was no way to no which administrator at Wexford had made the decision to "continue conservative management" and so Chencinski did all that was required in order to put IDOC on notice of his

complaints by preparing a detailed grievance of his complaints and the language that was used by the administration at Wexford to deny his treatment.

Defendant Shaffer, however, argues that this case is more like the situation presented in **Knox v. Rhodes, Case No. 08-cv-277-JPG, 2010 WL 3937389 (S.D.Ill. 2010)**, which distinguished its case from **Glick** in finding that Plaintiff had failed to properly exhaust his grievance by failing to name or describe the defendants. In that case, District Judge Gilbert found that Plaintiff had not exhausted his administrative remedies because he could have at least identified their job title or description as it was not the sort of case that required sifting through the red tape. However, in this case Plaintiff had no way of knowing until March 4, 2009 that Defendant Shaffer, or someone with Defendant's job description as head of nursing, had any part in the decision making process for his treatment. Although he listed Wexford as the decision maker, like in **Glick**, he had no way of know who at Wexford was in charge of making treatment decisions. Therefore, the Court believes this factual situation to be much different than the one presented in **Knox** where the potential defendants were high ranking IDOC officials who could be easily identified by their title or description.

Further, Defendant Shaffer maintains that Plaintiff was required, for exhaustion purposes, to file an additional grievance once he learned of Shaffer's involvement on March 4, 2009. Defendant fails to cite any case law to back this claim and the Court disagrees with her argument. The purpose of the grievance system is not to put individuals on notice of potential lawsuits but rather "to give prison administrators an opportunity to address a shortcoming." **Glick, 2010 WL 2775864, at \*3**. Plaintiff did not learn of Shaffer's involvement until he received the letter from the Illinois Department of Correction Administrative Review Board, informing him of the denial of his appeal to the Review Board. At that point in the grievance process, Plaintiff's complaint had gone through the entire grievance process and had been denied at each level. His grievance had been fully exhausted on the

issue of his botox treatment. The undersigned fails to see how filing an additional grievance on the same issue but naming an additional person involved gives the prison an opportunity to address shortcomings when it had already denied his grievance on the issue, nor is there any provision in the Illinois Administrative Code to suggest that Plaintiff was required to start the process over again. To force Plaintiff to file an additional grievance on the same issue would be requiring him to put individual defendants on notice of a potential lawsuit, which is not required for exhaustion purposes. **See Glick, 2010 WL 2775864, at \***3. Accordingly, Plaintiff was not required to file an additional grievance in order to fully exhaust his complaints against Defendant Schaffer. Therefore, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff's January 19, 2009 grievance, despite its failure to name Defendant Shaffer, complied with Illinois regulations.

## IV. Conclusion

For the reasons set forth above, it is hereby **RECOMMENDED** that the Court **FIND** that Plaintiff has exhausted his administrative remedies and that Defendants' motion for summary judgment (Doc. 47) be **DENIED**, and that the Court **ADOPT** the foregoing findings of fact and conclusions of law. If the Court adopts this Report and Recommendation, then Plaintiff's claims of deliberate indifference against Defendants Wexford Health Services, Dr. David, Shaffer, and Rhine remain pending.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

**IT IS SO ORDERED**.
DATED: February 25, 2011

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge