IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT CHENCINSKI, JR., #B75443, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ROGER E. WALKER, JR., JODY )<br>HATHAWAY, WEXFORD U.R., DR. )<br>ALFONSO DAVID, GINA SHAFFER, )<br>SCOTT RHINE, )<br>)<br>Defendants. ) | Case No. 09–cv–658–SCW |

# MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I. Introduction

Before the Court is a motion for summary judgement filed by Defendant Scott Rhine (Docs. 96 & 97). Specifically, Defendant Rhine argues that he is entitled to summary judgment on Plaintiff's claim of deliberate indifference because, as a grievance officer, Defendant Rhine responded appropriately to Plaintiff's medical grievances. Defendant also maintains that he is entitled to summary judgment under the doctrine of qualified immunity. Plaintiff has filed a Response to Defendant's motion (Doc. 102). Defendant has filed a Reply (Doc. 104). Based on the following, the Court **GRANTS** Defendant's motion for summary judgment.

### II. Factual Background

At the time that the events at issue in Plaintiff's Complaint took place, Plaintiff was an inmate at Shawnee Correctional Center. At some point in June of 2007, Plaintiff was diagnosed with a blepharospasm, a condition which causes his eye to spasm, while detained at Cook County Jail (Doc. 97 Ex. A at p. 8). On June 2, 2008, Plaintiff saw Dr. David regarding his eye issues. Plaintiff was

informed by Dr. David that his condition was cosmetic.

Although it is unclear whether Plaintiff filed his first grievance before or after he saw Dr. David on June 2, 2008, it is clear from the record that Plaintiff filed his first grievance regarding his medical treatment for his eye also on June 2, 2008.[1] In that grievance, Plaintiff complains about his eye and requests botox treatment (Doc. 97 Ex. A at pp. 10-11). On June 2, 2008, at the time Plaintiff filed his grievance, Defendant Rhine was Plaintiff's counselor. Defendant Rhine sent the grievance to the health care unit for a response and responded to the grievance on July 7, 2008, stating that "[p]er Alfonso David, MD, inmate has been scheduled for a re-evaluation" (Doc. 97 Ex. B at p. 15; Ex. A at pp. 10-11; Ex. A-1). Rhine testified at his deposition that this was standard practice for a counselor to respond to an inmate's grievance by forwarding a copy of the grievance to the grieved party and allowing them to respond (Doc. 97 Ex. B at p. 16). As long as Rhine found the response appropriate, he would then forward the response back to the inmate (*Id.* at pp. 16-17).

Plaintiff again met with Dr. David on July 1, 2008, presumably in response to David's note in the grievance that he would schedule Plaintiff for a re-evaluation (Doc. 97 Ex. A at p. 43). David and Plaintiff discussed his complaint regarding his eye and possible treatment. Plaintiff was then seen by an optometrist on July 13, 2008 who again suggested he receive botox and suggested he see Dr. Umana (*Id.* at p. 44). Plaintiff indicated that this meeting eventually led to him seeing Dr. Alam. In October 2008, Plaintiff was referred to an outside neurologist, Dr. Alam, and met with Alam on October 30, 2008 for an initial consultation (Doc. 97 Ex. A at pp. 45-47). At that time, Dr. Alam recommended Plaintiff take Depakote and ordered both an EEG and CT scan (*Id.* at p. 47). On November 3, 2008, Plaintiff met with Dr. David who prescribed Plaintiff Depakote (*Id.*).

---

[1] Plaintiff admits that he saw Dr. David on June 2, 2008. However, he also denies in his deposition that he saw Dr. David June 2 and instead stated that he did not see Dr. David until after he filed his original grievance on June 2, 2008 (Doc. 97 Ex. A at pp. 18, 22).

Plaintiff received a CT and EEG on November 20, 2008. Plaintiff again met with Dr. David on November 25, 2008, to discuss the results of the two tests (*Id.* at p. 48). Plaintiff then met with Dr. Alam on December 11, 2008, who reviewed the EEG and CT results. Plaintiff subsequently met with Dr. David on December 17, 2008 and January 19, 2009 (*Id.* at pp. 49-50).

Plaintiff filed his second grievance regarding his eye on January 19, 2009 (Doc. 97 Ex. A at pp. 12-13, A-2). He again asked for botox treatment for his. At the time Plaintiff filed this grievance, Defendant Rhine was the grievance officer. As a grievance officer, Defendant stated that he would review the healthcare unit's response to the grievance and then make a recommendation based on that response (Doc. 97 Ex. B at pp. 19-20). His grievance had originally been denied by Plaintiff's counselor as Director of Nursing Gina Schaffer had noted that the risk of toxins with the procedure outweighed the temporary reduction of symptoms (Doc. 97 Ex. A at pp. 13-14). Defendant, after receiving the grievance from Plaintiff, reviewed the response from health care and ultimately denied the grievance (*Id.*). Defendant indicated that he did not speak with Schaffer directly, but reviewed her memorandum that she had supplied regarding Plaintiff's grievance (Doc. 97 Ex. B at pp. 22-23).

Plaintiff filed another grievance on January 26, 2009 (Doc. 97 Ex. A at pp. 14-15, A-3). This grievance focused on a chipped tooth that Plaintiff received as a result of his eye twitching. Defendant Rhine, still the grievance officer, reviewed the grievance and informed Plaintiff that he was on the list for a partial denture and had already had his tooth pulled. In responding to the grievance, Defendant stated that he reviewed dentist Steve Aldridge's response from Plaintiff's counselor (Doc. 97 Ex. B at p. 23). He did not speak with any doctors and nurses regarding Plaintiff's eye condition for this grievance (*Id.*). Plaintiff did not file any other grievance regarding his eye (*Id.*).

### III. Summary Judgment Standard

Under **FEDERAL RULE OF CIVIL PROCEDURE 56(c)**, summary judgment is proper

only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**. *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* **422 F.3d 603, 607 (7th Cir. 2005)**. The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, **398 U.S. 144, 160 (1970)**. *See also Lawrence v. Kenosha County*, **391 F.3d 837, 841 (7th Cir. 2004)**. A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986);** *Ballance v. City of Springfield, Illinois Police Department*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial, whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under **FEDERAL RULE OF CIVIL PROCEDURE 50(a)**, which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986).** *See also Celotex Corporation v. Catrett*, **477 U.S. 317, 322-23 (1986);** *Packman v. Chicago Tribune Co.*, **267 F.3d 628, 637 (7th Cir. 2001);** *Sybron Transition Corporation v. Security Insurance Company of Hartford*, **107 F.3d 1250, 1255 (7th Cir. 1997).**

A showing of a mere factual disagreement between the parties is insufficient, the factual

issue must be "material," meaning that the issue must be one affecting the outcome of the suit. *See Outlaw v. Newkirk*, **259 F.3d 833, 837 (7th Cir. 2001)**. A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, **477 U.S. at 323**. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*.

### IV. Analysis

Defendant Rhine argues that he is entitled to summary judgment on Plaintiff's deliberate indifference claim against him because Plaintiff has not shown that Defendant was deliberately indifferent to Plaintiff's eye problems. The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976))**. In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).** The following circumstances could constitute a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, **546 F.3d 516, 522-23 (7th Cir. 2008) (quoting** *Gutierrez v. Peters*, **111 F.3d 1364, 1373 (7th Cir. 1997))**. *See also Foelker v. Outagamie County*, **394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's**

attention.")**.

The second prong of the deliberate indifference analysis requires that a prisoner show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle* **v. Gamble, 429 U.S. 97, 104 (1976) (quoting** *Gregg v. Georgia***, 428 U.S. 153, 173 (1976)**. "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen***, 780 F.2d 645, 652-53 (7th Cir. 1985)**. Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id***. at 653;** *Shockley v. Jones***, 823 F.2d 1068, 1072 (7th Cir. 1987)**. Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno***, 414 F.3d at 653.** "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan***, 511 U.S. 825, 842 (1994) (citations omitted)**. A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder***, 546 F.3d 516, 524 (7th Cir. 2008) (quoting** *Sherrod v. Lingle***, 223 F.3d 605, 611 (7th Cir. 2000))**. The Seventh Circuit has noted that the standard is "a high hurdle..because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Roasrio v. Brawn***, 670 F.3d 821-22 (7th Cir. 2012) (***Collins v. Seeman***, 462 F.3d 757, 762 (7th Cir. 2006))**. "Even if the defendant recognizes the substantial risk, he is free from liability

if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

The parties dispute as to whether Plaintiff suffered from a serious medical condition.[2] However, for purposes of this motion only, the Court will presume that blepharospasm, and the complications Plaintiff suffered from as a result of blepharospam, is a serious medical condition. Defendant Rhine contends he is entitled to summary judgment because, as a counselor and grievance officer, he was not deliberately indifferent to Plaintiff's medical needs as he checked with medical officials in responding to Plaintiff's grievances.

Here, the Court agrees with Defendant Rhine that there is no evidence that Rhine, as a counselor or a grievance officer, acted with deliberate indifference to Plaintiff's medical needs. The evidence before the Court demonstartes that Defendant Rhine reviewed Plaintiff's grievances and then forwarded the grievance on to medical staff for a response (Doc. 97 Ex. B at p. 15). When he responded to the grievance as a counselor, he would receive a response from the grieved party, in the case of Plaintiff the medical staff, and, if he found the response to be adequate and legitimate, he would then send it back to the inmate (Doc. 97 Ex. B at pp. 16-17). As to the grievances he received from Plaintiff when he was the grievance officer, Rhine reviewed the findings in the grievance and the

---

[2] Defendant points out that blaphorospasm causes the eye to twitch and while annoying, Defendant argues that it does not constitute a serious medical condition. Defendant points out that even though the condition causes some annoyance, Plaintiff has still been able to shave, brush his teeth, hold several prison jobs, and attend school which requires reading, and his condition has only required minor adjustments to his daily life (Doc. 97 Ex. A at pp. 32-39). Defendant also notes that Dr. David referred to Plaintiff's condition as "cosmetic" (Doc. 97 Ex. A at pp. 42-43). Meanwhile, Plaintiff argues based on an affidavit from Dr. Umana that blaphorospasm is a serious medical condition, noting that the condition is characterized by uncontrollable, forcible closure of the eyelids which increase over time in frequency and severity until the eyelid is left shut and eyebrow pulled down (Doc. 102 Ex. 1). Plaintiff also notes that he has suffered more than a mere annoyance, in that he has difficulty brushing his teeth, has been unable to hold certain jobs in the prison, and has been interrupted in his studying due to his eye condition (Doc. 102 Ex. 5 at pp. 33-39).

response from the health care unit and would make a recommendation based on those findings (Doc. 97 Ex. B at pp.19-20). It appears from the evidence in the record that Defendant Rhine did all that was required of him as a counselor and/or grievance officer. *Hayes v. Snyder*, **5464 F.3d 516, 527 (7th Cir. 2008) (grievance officer not deliberately indifferent when he investigated complaint and referred the complains to medical providers).**

With all three grievances, Rhine received responses from the medical staff and based his decision on those responses. In Plaintiff's first grievance filed June 2, 2008, Defendant responded on July 7, 2008 and noted that Dr. David would schedule Plaintiff for a re-evaluation (Doc. 97 Ex. A-1). Plaintiff does not deny that he saw Dr. David on June 2, 2008 and July 1, 2008 and then saw the optometrist on July 13, 2008. Further, in response to Plaintiff's second grievance dated January 19, 2009, Defendant responded with a note from Director of Nursing Gina Shaffer that the medical staff was continuing with conservative management of Plaintiff's condition and that the risks associated with the use of botox outweighed any short term reduction in symptoms (Doc. 97 Ex. A-2). In Plaintiff's third grievance, he noted that he had chipped a tooth as a result of his eye twitching and asked that the tooth be filled. However, Defendant denied Plaintiff's grievance as Plaintiff's tooth had already been pulled and according to the dentist he was in line for a partial denture (Doc. 97 Ex. A-3). From the grievances, it is clear that, contrary to Plaintiff's argument that Defendant did not contact medical staff, Defendant reviewed Plaintiff's complaints and investigated them with the appropriate medical staff. Plaintiff has failed to point to anything in the record which would suggest that Defendant Rhine was not correct in relying on the medical staff's response that Plaintiff was receiving treatments. *Greeno v. Daley,* **414 F.3d 645, 655 (7th Cir. 2005) (prison official who reviewed complaints and verified with staff that inmate was receiving treatment was not deliberately indifferent).** Instead, as a non-medical official, Defendant Rhine was "justified in believing that the prisoner [was] in capable

hands" when he received responses from various medical staff indicating that Plaintiff was being seen by medical staff and a course of treatment was in place *Id*. **at 656.**

Further, this does not appear to be the type of situation where the Counselor/Grievance officer ignored Plaintiff's grievance like in some cases noted by the Seventh Circuit in which an official shredded the grievance without reading it or prevented the medical staff from providing care. *See Burks v. Raemisch*, **555 F.3d 592, 595 (7th Cir. 2009) ((citing cases where a grievance examiner's actions could possibly amount to deliberate indifference) citing** *Greeno v. Daley*, **414 F.3d 645, 655-56 (7th Cir. 2005);** *Vance v. Peters*, **92 F.3d 987, 993 (7th Cir. 1996);** *Hernandez v. Keane*, **341 F.3d 137 (2d Cir. 2003));** *Greeno*, **414 F.3d at 656 (noting that the court's decision might have been different had defendant ignored the plaintiff's grievance completely).** Instead, it is clear from the record that Defendant Rhine did all that the Seventh Circuit requires in investigating Plaintiff's grievance and deferring to the medical staff. As the Seventh Circuit has pointed out in the past, "[t]he policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one." *Hayes*, **546 F.3d at 527.** While Plaintiff maintains that Defendant's responses were delayed, it is clear from the record that Defendant promptly responded to Plaintiff's grievances within weeks of receiving them and after receiving what he felt were appropriate responses from medical staff. Thus, the Court finds that there is nothing in the record to suggest that Defendant was deliberately indifferent. Accordingly, the Court **GRANTS** Defendant Rhine's motion for summary judgment (Docs. 96 & 97).

## V. Conclusion

The Court, therefore, **GRANTS** Defendant Rhine's motion for summary judgment on Plaintiff's claim against him for deliberate indifference. There are no longer any claims against

Defendant Rhine pending in this case for trial.

    IT IS SO ORDERED.

    DATED: June 15, 2012.

                                                          */s/ Stephen C. Williams*
                                                          STEPHEN C. WILLIAMS
                                                          United States Magistrate Judge